[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action originally commenced by the plaintiff wife on November 23, 1999 seeking a dissolution of the marriage on the grounds of irretrievable breakdown. In that the complaint failed to recognize the interests of the State of Connecticut, a First Amended Complaint was filed on March 4, 2002. Under the terms of the Complaint, plaintiff wife claims joint custody of the minor children, child support, an equitable division of the marital assets and any other relief deemed appropriate by the court. Trial was held on July 11 and 12. Both parties testified extensively and the court also heard testimony from Mr. Joseph CT Page 10072 Gennuscio, owner of Flor-Tex and the defendant's recent employer; Ms. MaryAnn Stokes, the defendant's domestic partner; and Mr. Wayne Miller, the plaintiff's domestic partner. The court also received seventeen stipulated exhibits.
Findings of Fact
From the testimony and evidence presented, and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were married on August 2, 1980 in Enfield, Connecticut. At the time of the filing of the original divorce complaint, there were two minor children issue of the marriage. Matthew J. Mc Cauliff was born on September 19, 1982, and Stephanie A. Mc Cauliff was born on February 1, 1990. Only Stephanie remains a minor at the time of this writing. The State of Connecticut contributed to the support of the minor children during the course of the marriage. The Attorney General was served with a copy of the First Amended Complaint and filed an appearance in this case. The parties have resided continuously in this state for more than twelve months immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
The husband is forty-four years old. He does not have a high school diploma. During the course of the marriage he has worked in the floor covering installation business, primarily as a selfemployed individual, earning most recently on average $885 per week. The defendant has not paid taxes, federal, state, or FICA, for the last several years, on his self-employment income. He is in good health and expert at his trade. He is newly employed at Business Invirons, where his weekly gross is $960 and his net, after employer deductions for applicable taxes, is $683.
The wife is forty-five years old. During the course of the marriage, the parties agreed that she would not work but instead would stay at home and raise the children and maintain the household. Although she did not work outside the home, the wife handled the tax and financial aspects of the husband's business and all the budgetary and financial affairs for the family. She had brief periods of work outside the home: in 1986 as a school bus driver, and in 1997 as a clerk for a weekly gross and $321 net. She is also in good health and recently obtained her insurance sales licenses.
The problems in the marriage surfaced as early as 1984, when the defendant husband's time away from his family extended beyond work and commuting hours and into overnight and extended absences. His activities during these unexplained absences from the family centered on drinking CT Page 10073 and partying, along with casual romantic relationships. These casual relationships would from time to time intrude upon the household, with late night phone calls to the husband from unidentified female acquaintances. On at least one occasion, the plaintiff wife retrieved the husband from a motel room. In 1986, the wife filed for a divorce, and had a romantic relationship herself during a period of separation. That filing was later withdrawn. The husband admits that his wife complained about his drinking, and absences from the family, many times. The husband also admits that he verbally abused his wife when he was drinking. Over the years, while the children were young, the wife routinely covered for their father's absences with the children. Thus, although the husband was making every effort through hard work at his trade to be a good provider for the family, the drinking and unexplained lengthy absences from home were serious issues for his wife and the source of many arguments. The husband has been involved in alcohol-related car accidents and has been arrested for driving under the influence. The husband claims he is not an alcoholic and fails to acknowledge the direct relationship between his drinking and the failure of his marriage.
During the course of the marriage the parties were unable to accumulate substantial assets. They purchased a house, yet were unable to establish any equity in that asset. They purchased only modest items of personal property for the house. Their motor vehicles are of minimal value; they have no savings to speak of. After this action was brought, the defendant husband liquidated his supplemental annuity account with the Connecticut Carpenters Pension Fund, and used the $4,093 in January 2000 to pay the retainer for his divorce counsel. The plaintiff wife was never advised of this withdrawal. Also during the pendency of this divorce and without disclosure, the husband sold and retained the proceeds of, certain household items, including a wood stove, riding lawn tractor and a dining room cabinet.
The defendant husband, pursuant to an Agreement "to stay the foreclosure on the marital home" filed for Chapter 7 bankruptcy on May 2, 2000. This Agreement was the result of the plaintiff wife's filing a Motion for Exclusive Possession of the family home. The defendant occupied the marital home, with his girlfriend and her children, for many months after the parties separation in 1998 and never paid the mortgage, real estate taxes or property insurance. As a result, a Judgement of Foreclosure by Sale has been entered, with a sale date of May 4, 2000. Incident to his bankruptcy filing, the husband's personal unsecured debts were also extinguished, but for the Discover credit card debt, used in the defendant's business, which is now a $3359 lien on the wife's residence.
In September 1998, the State filed a Support Petition against the CT Page 10074 defendant husband requesting that the family support magistrate order the defendant to provide financial and medical support and maintenance for his two minor children who had received state welfare and medical assistance in 1998. The defendant was served at his verified place of abode but failed to come to court when ordered. An arrearage was found owed to the State, and the defendant was ordered to pay weekly on that arrearage. In May 1999 both the defendant and plaintiff were present in court and the defendant was ordered to pay $204 per week for the support of his two minor children. The matter was continued to July 1999 to give the defendant the opportunity to document his income by bringing to court his pay stubs and 1998 tax returns. On the continuance date the defendant again failed to return to court as ordered. On the next continuance date when both parties were present, the current child support was set at $293.40 per week, unallocated, for the two children. In November 1999 the defendant filed a motion to modify the child support, stating he is no longer self employed. The modification matter was continued numerous times, with neither party present. Finally the parties appeared with counsel on February 1, 2000 and the defendant's motion to modify, filed with the family support magistrate, was withdrawn, apparently due to the intervening filing of the divorce complaint. In November 2000 the defendant husband was cited into magistrate court to show cause why he should not be held in contempt for failure to pay his child support order. The contempt matter was continued to allow the defendant to file a motion to modify the child support. On January 9, 2001, the child support was modified down to $150 per week current support, reflecting the parties earnings and the fact that one of the two children had reached age 18. As to the contempt motion, the defendant was found to be in arrears to the plaintiff for $2,590, and ordered to pay that arrears with a lump sum of $576 in one month and $200 per month thereafter. After several intervening court dates, the defendant was found in compliance with the child support order on November 27, 2001.
Discussion
The plaintiff wife and defendant husband were together as a couple from their teenage years. During the course of their twenty-two year marriage, the plaintiff was a devoted mother, a helpful business partner, and faithful to her husband, except for a relationship during the period when she initially filed for divorce in 1986 and the parties were separated.
The reasons for the breakdown of this marriage are apparent. During the marriage the defendant husband demonstrated a problem with excessive alcohol consumption and persistent unexplained absences from the family overnight. This habitual intemperate behavior was without regard to its effect on his wife and their children. When he was drinking the defendant CT Page 10075 was verbally abusive to his wife and their older teenage son.
The defendant husband's behavior during the pendency of this dissolution action was obstreperous and, at times, malicious. During the almost two year period of time while the defendant, his girlfriend and her children were occupying the marital residence, the defendant: failed to pay the mortgage insurance and real estate taxes, failed to maintain the home and yard in reasonable condition, and purposely destroyed the foreclosure sign. He remained in the marital residence, continuing to contribute actively to its financial and physical decay, until finally signing an agreement to vacate the home on the day of the court hearing. The defendant husband has failed to file four years of federal tax returns in a timely fashion (it may be the case that a 1997 federal tax return was filed in 2002; the defendant couldn't recollect). The defendant's wilful long-term disregard of his federal tax obligation has resulted in the IRS seizure, over the last several years, of the plaintiff wife's tax refunds. The defendant's duplicitous behavior is exemplified by at least three additional situations testified to at trial. He has resided in subsidized housing since August 2000 with no credible proof provided of his being added to the lease agreement between the housing authority and his girlfriend. The defendant continued to collect state unemployment income while earning thousands of dollars employed full-time by Flor Tex as a subcontractor. Finally, the defendant unilaterally: liquidated his retirement fund during the pendency of the divorce and sold the couple's remaining personal property.
Orders
This is a relatively long-term marriage of twenty-two years. Both parties are at the stage in life that their ability to significantly increase their current earnings is limited. The defendant husband's current income is over twice the plaintiff wife's. His income is likely to remain at this level; the plaintiff's income is likely to rise modestly. Both parties are in fairly stable live-in relationships. In the defendant's relationship he enjoys extraordinarily state subsidized housing expenses; the plaintiff's relationship provides her a substantial contribution to nonsubsidized living expenses. The wife has not been part of the workforce for most of the marriage by choice of both parties; it will take her several years to overcome that lost experience. The husband is at the peak of his earnings potential. The plaintiff has been, and continues to be, burdened with the effects of the defendant's acknowledged avoidance of his federal income tax obligations. There is a lien on the plaintiff's property representing the defendant's business credit card balance. The plaintiff paid the mortgage and taxes and insurance on the marital residence for several months while the defendant was residing there actively [un]managing the marital property towards CT Page 10076 foreclosure. The defendant removed personal property from the marital residence. The defendant liquidated his retirement annuity. The plaintiff has unnecessarily incurred legal costs and fees related to the defendant's destructive and disingenuous behavior during the pendency of the break up of their defendant's destructive and disingenuous behavior during the pendency of the break up of their marriage.
Thus after taking into account all of the criteria and factors set forth in § 46b-62, § 46b-81, and § 46b-82, and applying the same to the evidence, the court enters the following orders:
 1. A decree is entered dissolving the marriage of the parties on the basis of irretrievable breakdown.
 2. The parties will share joint legal custody of the minor child, primary residence with the plaintiff mother, subject to reasonable rights of parenting and visitation to the defendant father.
 3. The defendant shall pay to the plaintiff current child support in the amount of $150.00 per week for the minor child Stephanie A. Mc Cauliff, born February 1, 1990. Child support shall be governed by the orders in the matter of Sheryl Mc Cauliff vs. Stephen Mc Cauliff, Docket Number FA 98 0068393 S, including periodic payment on arrears owed to the plaintiff or the State of Connecticut.
 4. The defendant shall pay the plaintiff a lump sum alimony in the amount of $21,600, payable in monthly installments of $300.00 commencing September 1, 2002. Said alimony installments shall not terminate upon the remarriage of the plaintiff. Said alimony installments shall terminate upon the death of the plaintiff. Upon payment in full of the alimony obligation hereunder, the plaintiff shall hold the defendant harmless on the outstanding 1994 and 1995 income tax liabilities. There shall be no periodic alimony to either party, now or in the future. The payment of the lump sum alimony by the defendant and its receipt by the plaintiff shall not be considered a substantial change in circumstances under the child support guidelines.
5. The defendant shall obtain and maintain life CT Page 10077 insurance coverage on his life in the face amount of not less than $100,000, for so long as he has a duty to pay lump sum alimony in installments and/or child support, and he shall name the plaintiff as beneficiary thereon. The defendant shall provide annual proof of said life insurance coverage upon written request of the plaintiff.
 6. The plaintiff shall be entitled to claim the minor child, Stephanie, as an exemption for state and federal income tax purposes.
 7. The plaintiff and defendant both shall maintain medical and dental insurance for the benefit of the minor child as may be available at reasonable cost through their employer or the Husky plan. All unreimbursed medical, dental, optical, orthodontic,, pharmaceutical, psychological and other related expenses for benefit of the minor children shall be split as follows: 25% to the plaintiff and 75% to the defendant, pursuant to the child support guidelines.
 8. The defendant shall quitclaim to the plaintiff all of his right, title and interest in and to the real property known as 189 Buckley Highway, Stafford Springs, Connecticut.
 9. Except as noted herein each party shall be solely responsible for the debts listed on his/her financial affidavit and shall hold the other harmless thereon.
 10. Each party shall have sole ownership interest in any motor vehicles currently in their possession and shall be responsible for all taxes, insurance and loans relating to said motor vehicles and hold the other party harmless thereon. The parties shall cooperate in transferring their interest in said motor vehicles, if any, to the other party.
11. Attorney fees are not awarded to the plaintiff. The court finds that neither party is in a substantially better position than the other for the purpose of paying attorney fees, and that the award of attorney fees would be incompatible with CT Page 10078 the overall equitable distribution of the marital assets in this case.
Plaintiff's attorney shall prepare a judgment file within thirty days of the date of this judgment. Said judgment file shall be signed by both the attorney for the plaintiff and the defendant.
Alvord, J.